1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RALPH G. JOHNSON,

                Plaintiff,

      v.

THE BOEING COMPANY, a Delaware
corporation,

and

BARBARA WILEY, individually and on
behalf of her marital community,

             Defendants.

NO.

PLAINTIFF'S COMPLAINT

Plaintiff files this complaint through its undersigned counsel of record and claims the following against Defendants:

## I.    PARTIES, JURISDICTION AND VENUE

1.1    The Plaintiff, RALPH G. JOHNSON (hereinafter referred to as "Johnson" or "Plaintiff") is an individual over the age of eighteen years who at all relevant times was a resident of Snohomish County, Washington.

1.2    Defendant THE BOEING COMPANY (hereinafter referred to as "Defendant Boeing") is a Delaware corporation doing business in Washington.  Defendant Boeing is, and at all relevant times was, registered as a business entity in Washington.  Defendant Boeing can be

COMPLAINT – 1

served with process through its registered agent for service of process: Corporation Service Company, 300 Deschutes Way Southwest, Suite 304, Tumwater, Washington 98501.

1.3     Defendant BARBARA WILEY (hereinafter referred to as "Defendant Wiley") is an individual over the age of eighteen years, who, upon information and belief, at all relevant times was a resident of King County, Washington.  Upon information and belief, Defendant Wiley can be served with process at the location commonly referred to as 20333 - 208th Avenue Southeast, Renton, Washington 98058-0201.

1.4     This Court has subject matter jurisdiction to hear this case because the controversy arises under the laws of the United States.  28 U.S.C. § 1331.  This Court has jurisdiction to hear Plaintiff's state law claims because such state law claims form part of the same case or controversy as the federal claims.  28 U.S.C. § 1367; *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726 (1966).  Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.  28 U.S.C. § 1391.

## II.     FACTUAL ALLEGATIONS

2.1     During all relevant periods of the below-stated factual allegations, the Plaintiff was over 40-years old, making him a member of a protected class under the Age Discrimination in Employment Act of 1967, and the Washington State Law Against Discrimination.

2.2     Plaintiff Ralph Johnson has been employed by Boeing since 1989.

2.3     During his employment with Boeing, Johnson served two tours in Iraq with the United States Army.  Johnson is now retired and honorably discharged from the Army.  Johnson is rated 20% disabled by the Veterans Affairs Administration for tinnitus, and a heel injury he suffered while on active duty.

COMPLAINT – 2

2.4     In January of 2010, Defendant Boeing promoted Johnson to a management positon.  During his tenure, Johnson received favorable reviews and was well-respected among Defendant Boeing employees.

2.5     In early 2013, during his managerial duties Johnson noticed labor charging irregularities related to Defendant Boeing's KC-46 tanker program.[1]  Johnson brought the labor overcharging irregularities to the attention of his second level supervisor.  Without resolution of the irregularities, Johnson was directed to take steps to reduce labor charges.  Following Defendant Boeing's procedures, and instructions from his supervisor, Johnson did so.

2.6     Later, in early summer of 2013, Johnson received his quarterly evaluation.  Despite consistently meeting and exceeding Defendant Boeing expectations, Johnson received a reduced grade from his previous rating.  Johnson repeatedly asked his superiors why his grading was now below what it had been. As of filing this lawsuit, Johnson has not received a clear explanation.

2.7     As the summer of 2013 moved on, Johnson discovered another troubling problem with the KC-46 program.  Johnson was approached by an employee (who wished to maintain anonymity due to fear of retaliation) who revealed that test fuel valves were being falsely certified for in-flight use.  Test fuel vales for the KC-46 must be tested in a laboratory environment and then marked "TEST USE ONLY."  This is done to isolate problems with the valves and to prevent faulty fuel valves from being installed on the aircraft for in-flight use.[2]

---

[1] The Department of Defense recently awarded Boeing a $2.8 billion dollar contract to produce up to 179 KC-46 re-fueling aircraft.  However, according to a recent DefenseNews.com article, cost overruns with the program are already approaching more than $2 billion dollars.  Boeing will miss its first contractual deadline to deliver 18 aircraft to the Air Force by August of 2017. Boeing CEO Dennis Muilenburg stated some of the costs associated with the overrun were due to "…some job categories that are taking longer than planned in terms of hours per job[.]" Valerie Insinna, *Boeing Takes Another $201M Hit On KC-46 Tanker*, DefenseNews (January 25, 2017), http://www.defensenews.com/articles/boeing-takes-another-201m-hit-on-kc-46-tanker

[2] The KC-46 program has experienced fuel system issues that have caused the project to run over budget and tardy.  The program executive officer for tankers, Air Force Brigadier General Duke Richardson, stated that "[t]echnical

COMPLAINT – 3

**LIFE POINT LAW**
31919 6th Ave. S, #A100
Federal Way, WA 98003
Phone: (253) 838-3454

2.8     Despite Defendant Boeing's test and evaluation laying out the protocol above, Johnson learned that Boeing Quality Assurance Manager Latifah Crawford altered maintenance documents, and directed subordinates to falsify certification of the fuel valves by removing the 'TEST USE ONLY" warning label.  It is possible that some "TEST USE ONLY" fuel valves were installed on KC-46 tankers.  In-flight failure of a "TEST USE ONLY" fuel valve would be catastrophic.

2.9     Understanding the gravity, Johnson filed a complaint with Defendant Boeing's ethics department, as required by Defendant Boeing's employee Code of Conduct,[3] and with the Department of Defense Office of Inspector General (hereinafter referred to as "DOD").  At this point, Boeing intensified its scrutiny of Johnson.

2.10    In January of 2014, after Johnson filed his complaints, Johnson received an annual Performance Management Review.  This review lowered his grade from the previous year. Johnson asked for a clear explanation for receiving a reduced grade.  Once again, Johnson was never explained why his grade was reduced.

2.11    Two months after his Performance Management Review, in March of 2014, Johnson's direct supervisor, Gloria Terry (hereinafter referred to as "Terry"), informed him he would be moving from the day shift in Everett to the night shift in Seattle.  Terry has been, and continues to be, long-time friends with Quality Assurance Manager Latifah Crawford, whom Johnson filed a complaint against just months earlier for falsifying test valves.

---

challenges with [fuel] boom design and…wing air refueling pods have driven delays to low rate production approval and initial aircraft deliveries."  Collin Clark, *Another Boeing Tanker Delay; How Long, Oh Lord?*, Breaking Defense (May 31, 2016), http://breakingdefense.com/2016/05/another-boeing-tanker-delay-how-long-oh-lord/
[3] http://www.boeing.com/resources/boeingdotcom/principles/ethics_and_compliance/pdf/english.pdf

COMPLAINT – 4

**LIFE POINT LAW**
31919 6th Ave. S, #A100
Federal Way, WA 98003
Phone: (253) 838-3454

2.12    Terry stated that the reason for the transfer was so Johnson could "learn the business" for career development purposes.  Johnson found this explanation for his transfer to be highly unusual.  He had been an employee of Defendant Boeing since 1989, and understood Defendant Boeing's business procedures.  It is common knowledge among Defendant Boeing employees that the real "business" of Defendant Boeing takes place during the day shift.

2.13    Stated bluntly, the move was a punitive measure against Johnson for filing a complaint against Terry's close friend, Latifah Crawford.  The move from Everett to Seattle added substantial travel time.  The move to night shift also placed considerable stress on Johnson and his family due to his wife's recent struggle with thyroid cancer.  Johnson was told this move was for career development; however, Johnson never received a career development plan, or a mentor to teach him the "business."

2.14    Johnson formally submitted a written hardship request, which was eventually denied.  In consideration for the additional stress, Defendant Boeing offered Johnson flexible time off, travel reimbursement, and the opportunity to remain at the Everett site on certain days.  However, this agreement was later rescinded by management once Johnson moved to the night shift in Seattle.

2.15    In April of 2014, prior to assuming management duties on the night shift in Seattle, Johnson conducted a due diligence check of the night shift's labor charging practices.  Johnson discovered suspicious labor changing practices by long-time Defendant Boeing employee Barbara Wiley.  Defendant Wiley was the night shift team lead during the questionable labor charging.  Defendant Wiley was also close friends with Gloria Terry, Johnson's supervisor, and Latifah Crawford, whom Johnson had previously filed a complaint against.

COMPLAINT – 5

2.16    Defendant Wiley also has a reputation among employees for being heavy-handed, manipulative, and vindictive.  Her subordinates have quit the company, or transferred to other positions, solely because of Wiley's abrasive disposition.

2.17    Johnson faced a dilemma: either raise the complaint and risk even more concerted retaliation from Terry, Crawford and Defendant Wiley; or, shrink form his duty and remain silent.  But, Johnson upheld his duty and filed an ethics violation against Defendant Wiley for improper labor charging.  Boeing later admitted the labor charging was suspect, but declined to act against Wiley.

2.18    In the summer of 2014, Defendant Wiley's effectiveness as a team leader came into question.  Besides the dubious labor charging practices, other employees complained of Defendant Wiley creating a difficult work environment.  Some accused Defendant Wiley of engaging in unethical behavior.  One employee alleged that Defendant Wiley orchestrated a workplace accident, resulting in an employee cutting their finger on an X-ACTO knife blade placed in a computer keyboard.  Defendant Boeing investigated, but refused to act against Defendant Wiley.

2.19    With morale declining, and losing confidence in Defendant Wiley's ability to lead, Johnson removed Defendant Wiley as a team leader.

2.20    After removing Defendant Wiley from her leadership position, on or around October 3, 2014, Johnson learned Defendant Wiley was planning to file a retaliatory false sexual harassment claim against him.  Gloria Terry, Johnson's immediate supervisor, advised Johnson that Defendant Wiley was communicating to other employees that Johnson groped her on a day that Johnson was off work, and off site.  True to her word, Defendant Wiley filed a sexual harassment claim.  Defendant Boeing's investigation found the claim unsubstantiated.  Johnson

COMPLAINT – 6

1    requested that Defendant Boeing take adverse action against Wiley for making a false claim—

2    Defendant Boeing refused.

3          2.21    On or about March 26, 2015, Johnson was abruptly informed he was being

4    removed from management, suspended for one week without pay, and awarded two Corrective

5    Action Memos ("CAMs").  Johnson was told this adverse action was due to him failing to follow

6    Boeing protocol related to the XACT-O blade incident, which occurred nearly one year prior to

7    issuing the CAM, and for alleged improper retaliation against Defendant Wiley for filing a sexual

8    harassment claim.

9

10         2.22    Johnson denied all wrongdoing, and immediately requested mediation.  On or

11   about September 14, 2015, Defendant Boeing agreed to: (1) remove both CAMs from Johnson's

12   file; (2) pay Johnson his five days of wages that Defendant Boeing withheld, and (3) provide

13   Johnson with mentorship and training.  Johnson, and Defendant Boeing, memorialized this in

14   writing on the same day.

15

16         2.23    However, on or about September 28, 2015, two weeks after the agreement was

17   memorialized, Defendant Boeing notified Johnson that a settlement and release agreement would

18   be required as a condition to implementing the mediation agreement.  The release agreement

19   stated Johnson had 21-days to accept.

20

21         2.24    During that 21-day period, Johnson asked Defendant Boeing for additional

22   consideration in exchange for signing the release agreement—there was no response from

23   Defendant Boeing.  Johnson's then acting attorney contacted Defendant Boeing to discuss the

24   release agreement—there was no response from Defendant Boeing.  Johnson asked Defendant

25   Boeing for additional time to consider the release agreement—there was no response from

26   Defendant Boeing.  However, on the day after the release agreement expired, Johnson again

COMPLAINT – 7

contacted Defendant Boeing—this time, a prompt response: the deadline had passed, Defendant Boeing would not honor the September 28, 2015, mediation agreement.

2.25    Johnson is now an hourly employee with Boeing.  Johnson has not received the five days of wages wrongfully withheld from him.  Johnson has no prospect of regaining his management position.  Johnson has also been subjected to personal humiliation and professional embarrassment due to a false sexual harassment claim and concerted retaliation by Defendant Boeing's employees.  The above adverse actions were initiated in retaliation after Johnson filed his claim with the DOD inspector general, and notified Boeing of irregular labor charging related to the KC-46 program.

2.26    Because of this, Johnson has suffered monetary, physical, and emotional damages.

### III.        CAUSES OF ACTION

COUNT I:    *Defendant Boeing Unlawfully Retaliated Against Plaintiff for Engaging in a Protected Activity, in Violation of the False Claims Act Anti-Retaliation Provision.*

3.1    Plaintiff fully incorporates by reference the facts from sections I and II.

3.2    Plaintiff engaged in statutorily protected activity by filing a complaint with the United States Department of Defense Office of Inspector General, and with Defendant Boeing's internal ethics office.

3.3    Defendant Boeing knew that Plaintiff was engaging in such protected activity.

3.4    Defendant Boeing took adverse action against Plaintiff for engaging in protective activity by: (1) removing Plaintiff from day shift to night shift; (2) changing Plaintiff's worksite from Everett to Seattle, creating an almost hour commute one way for Plaintiff; (3) revoking Plaintiff's flexible worksite agreement and travel reimbursement; (4) wrongfully removing Plaintiff from management, and (5) subjecting Plaintiff to a false sexual harassment accusation.

COMPLAINT – 8

**LIFE POINT LAW**
31919 6th Ave. S, #A100
Federal Way, WA 98003
Phone: (253) 838-3454

3.5     Defendant Boeing's adverse employment action is casually related to Plaintiff's complaint with the DOD Inspector General and internal complaints regarding falsified fuel test valves.

_COUNT II:_     _Defendant Boeing Unlawfully Retaliated Against Plaintiff for Engaging in a Protected Activity, in Violation of the Washington Law Against Discrimination, as well as Title VII of the Civil Rights Act of 1964_

3.6     Plaintiff fully incorporates by reference the facts from sections I and II.

3.7     Plaintiff engaged in statutorily protected activity by filing a complaint with the United States Department of Defense Office of Inspector General, and with Defendant Boeing's internal ethics office.

3.8     Defendant Boeing knew that Plaintiff was engaging in such protected activity.

3.9     Defendant Boeing took adverse action against Plaintiff for engaging in protective activity by: (1) removing Plaintiff from day shift to night shift; (2) changing Plaintiff's worksite from Everett to Seattle, creating an almost hour commute one way for Plaintiff; (3) revoking Plaintiff's flexible worksite agreement and travel reimbursement; (4) wrongfully removing Plaintiff from management, and (5) subjecting Plaintiff to a false sexual harassment accusation.

3.10    Defendant Boeing's adverse employment action is casually related to Plaintiff's complaint with the DOD Inspector General and internal complaints regarding falsified fuel test valves.

COMPLAINT – 9

**LIFE POINT LAW**
31919 6th Ave. S, #A100
Federal Way, WA 98003
Phone: (253) 838-3454

COUNT III:   *Defendant Boeing Unlawfully Engaged in Age Discrimination Against Plaintiff, in Violation of the Washington Law Against Discrimination and the Age Discrimination in Employment Act of 1967.*

3.11    Plaintiff fully incorporates by reference the facts from sections I and II.

3.12    Plaintiff is over 40-years old, and is therefore a member of a protected class under the Washington Law Against Discrimination and the Age Discrimination in Employment Act of 1967.

3.13    Plaintiff was satisfactorily performing his job, as reflected by previous evaluations.

3.14    Plaintiff was terminated from his position as a manager.  Upon information and belief, Defendant Boeing considered Plaintiff's age to be a significant factor in terminating Plaintiff from his management position.

COUNT IV:   *Defendant Boeing Wrongfully Discharged Plaintiff, in Violation of Washington State Public Policy*

3.15    Plaintiff fully incorporates by reference the facts from sections I and II.

3.16    Plaintiff engaged in a protected activity that related to a clear public policy: whistleblowing to expose improper conduct related to taxpayer-funded Department of Defense projects.

3.17    Allowing Defendant Boeing to retaliation against Plaintiff for engaging in such activity would discourage others from doing so, thus jeopardizing the public policy.

3.18    Because Plaintiff engaged in such conduct, Defendant Boeing wrongfully discharged Plaintiff from his management position.

3.19    Defendant Boeing cannot offer an overriding justification for Plaintiff's discharge.

COMPLAINT – 10

1

2

*COUNT V:*     *Defendant Boeing is Wrongfully, and Willfully, Withholding Plaintiff's Wages, in Violation of RCW 49.52.050*

3      3.20    Plaintiff fully incorporates by reference the facts from sections I and II.

4      3.21    Defendant Boeing wrongfully suspended Plaintiff, without pay, for five days.

5 Defendant Boeing later agreed to pay Plaintiff his withheld wages by way of a mediation

6 agreement.  After the mediation agreement was memorialized, Defendant Boeing repudiated by

7 imposing an *ex post facto* condition not mentioned in the mediation agreement.

8

9      3.22    Defendant Boeing has, and continues to, willfully and wrongfully withhold wages

10 that Plaintiff is entitled to.

11

*COUNT VI:*    *Defendant Boeing Should be Estopped from Denying the Existence of an Enforceable Mediation Agreement Under the Theory of Promissory Estoppel*

12

13     3.23    Plaintiff fully incorporates by reference the facts from sections I and II.

14     3.24    Defendant Boeing made a promise to pay Plaintiff his withheld wages and remove

15 two CAM's from his employment record.

16     3.25    Boeing knew, or, in the alternative, should have reasonably expected that their

17 promise would cause Plaintiff to change his position.

18

19     3.26    Plaintiff did actually change his position by making financial and logistical

20 arrangements, justifiably relying on Defendant Boeing's promise.

21     3.27    Defendant Boeing then, *ex post facto,* conditioned the promise on Plaintiff

22 releasing all of his current and potential claims against Defendant Boeing.

23     3.28    Defendant Boeing worked an injustice on Plaintiff, and such injustice can only be

24 avoided by enforcement of Defendant Boeing's promise.

25

26

COMPLAINT – 11

**LIFE POINT LAW**
31919 6th Ave. S, #A100
Federal Way, WA 98003
Phone: (253) 838-3454

_COUNT VII:_   _Defendant Boeing Negligently Supervised Defendant Barbara Wiley_

3.29    Plaintiff fully incorporates by reference the facts from sections I and II.

3.30    Defendant Wiley presented a risk of harm to other employees; namely, she had a history of making unsubstantiated allegations against other co-workers, creating a hostile work environment, and engaging in unethical behavior that violated Defendant Boeing's employee Code of Conduct.

3.31    Defendant Boeing knew, or in the exercise of ordinary care, should have known of the risk of harm Defendant Wiley presented to other employees.

3.32    Defendant Boeing's failure to adequately supervise Defendant Wiley was the proximate cause of Plaintiff's injury.

_COUNT VIII:_   _Defendant Boeing Negligently Retained Defendant Barbara Wiley_

3.33    Plaintiff fully incorporates by reference the facts from sections I and II.

3.34    Defendant Boeing knew, or in the exercise of ordinary care, should have known that Defendant Wiley was unfit for retention due to her history of making unsubstantiated allegations against co-workers.

3.35    Defendant Boeing knew, or should have known of her unfitness for continued employment, before Plaintiff was harmed by her conduct.

3.36    Defendant Boeing's retention of Defendant Wiley was the proximate cause of Plaintiff's injuries.

**LIFE POINT LAW**
31919 6th Ave. S, #A100
Federal Way, WA 98003
Phone: (253) 838-3454

*COUNT IX:*     *Defendant Barbara Wiley Defamed Plaintiff by Making Knowingly False Sexual Harassment Claims*

3.37    Plaintiff fully incorporates by reference the facts from sections I and II.

3.38    Defendant Barbara Wiley negligently made knowingly false statements alleging Plaintiff sexual harassed her by physical contact.

3.39    Defendant Barbara Wiley's negligently made knowingly false statements constitutes an abuse of any privilege Defendant Wiley might have been entitled to.

3.40    At all times when Defendant Barbara Wiley negligently made knowingly false statements of sexual harassment against Plaintiff, Plaintiff was a private citizen.

3.41    Because of Defendant Barbara Wiley's negligently made knowingly false statements Plaintiff has suffered economic damage, damage to reputation, and emotional distress damages proximately caused by Defendant Barbara Wiley's conduct.

*COUNT X:*     *Defendant Barbara Wiley Intentionally Inflicted Emotional Distress on Plaintiff*

3.42    Plaintiff fully incorporates by reference the facts from sections I and II.

3.43    Defendant Barbara Wiley engaged in extreme and outrageous conduct by making a knowingly false accusation of sexual harassment against Plaintiff.

3.44    Defendant Barbara Wiley made a knowingly false accusation of sexual harassment with the intent of inflicting emotional distress on Plaintiff.

3.45    Defendant Barbara Wiley's conduct directly led to Plaintiff suffering emotional and physical distress, psychological anxiety, depression, and physical illness.

COMPLAINT – 13

1   COUNT XI:        *Defendant Barbara Wiley Negligently Inflected Emotional Distress on Plaintiff*

2       3.46   Plaintiff fully incorporates by reference the facts from sections I and II.

3       3.47   Defendant Barbara Wiley had a duty to refrain from engaging in conduct that

4   would foreseeably result in emotional distress to Plaintiff.

5       3.48   Defendant Barbara Wiley's knowingly false accusation of sexual harassment

6   against Plaintiff breached this duty.

7

8       3.49   Because of Defendant Barbara Wiley's negligence, Plaintiff has suffered

9   emotional distress, psychological anxiety, depression, and physical illness.

10  COUNT XII:       *All of Defendant Barbara Wiley's Tortious Conduct Should be Imputed to*
                     *Defendant Boeing Under the Doctrine of Respondeat Superior, or, Alternatively,*
11                   *Vicarious Liability*

12      3.50   Plaintiff fully incorporates by reference the facts from sections I and II.

13      3.51   Within the scope of her employment duties, Defendant Barbara Wiley had a duty

14  to "promptly report any illegal or unethical conduct to management…"[4]

15

16      3.52   Defendant Barbara Wiley did, at all relevant times, make knowingly false

17  defamatory statements about Plaintiff within the scope of her employment with Defendant

18  Boeing.  Upon information and belief, such statements were made on Defendant Boeing's

19  premises, during work hours, while interacting with other employees.

20      3.53   As a result, Defendant Barbara Wiley's negligent conduct should be imputed to

21  Defendant Boeing through the doctrine of respondeat superior, or, alternatively, vicarious

22  liability.

23

24

25

26

---

[4] http://www.boeing.com/resources/boeingdotcom/principles/ethics_and_compliance/pdf/english.pdf

COMPLAINT – 14

**LIFE POINT LAW**
31919 6th Ave. S, #A100
Federal Way, WA 98003
Phone: (253) 838-3454

1

## IV.  RELIEF

2

Plaintiff seeks the following relief against Defendants:

3
    1.  For economic damages resulting from Defendants' conduct;

4

5
    2.  For non-economic damages resulting from Defendants' conduct;

6

7
    3.  For treble or punitive damages as allowed by State or federal law;

8
    4.  For injunctive relief to enjoin Defendant Boeing from continued violations of
the Washington Law Against Discrimination and the Age Discrimination in
Employment Act of 1967;

9

10
    5.  For pre- and post-judgment interest on all sums;

11
    6.  For attorney fees and costs as allowed by statute, contract or equity;

12

13
    7.  For such other relief as the Court deems just and equitable.

14

15
LIFE POINT LAW

16
*s/Gregory A. McBroom*
Gregory A. McBroom, WSBA No. 33133
Bryan C. White, WSBA No. 52020
Attorneys for Plaintiff Ralph Johnson

17

18

19

20

21

22

23

24

25

26

COMPLAINT – 15

**LIFE POINT LAW**
31919 6th Ave. S, #A100
Federal Way, WA 98003
Phone: (253) 838-3454